Rene Adan
**CONTRERAS–ARAGON, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 85–7392.

United States Court of Appeals,
Ninth Circuit.

Argued En Banc and Submitted
June 16, 1987.

Decided July 15, 1988.

Rosemary J. Esparza, Centro De Asuntos Migratorios, Chula Vista, Cal., for petitioner.

James A. Hunolt, Office of Immigration Litigation, Civil Div., Washington, D.C., for respondent.

Before BROWNING, Chief Judge, GOODWIN, SNEED, HUG, TANG, FLETCHER, PREGERSON, POOLE, REINHARDT, KOZINSKI, and NOONAN, Circuit Judges.

HUG, Circuit Judge:

We took this case en banc to resolve an issue concerning the effect of affirming an order of deportation that also provides for voluntary departure. The Board of Immigration Appeals ("BIA") found Contreras–Aragon deportable and granted the alternative discretionary relief of 30 days' voluntary departure. A panel of our court affirmed the order of the BIA, but held that the voluntary departure period allowed by the BIA had expired and was no longer available to Contreras–Aragon. We voted *sua sponte* to take the case en banc to determine whether the affirmance of the BIA order permitted Contreras–Aragon to voluntarily depart during the pendency of his petition and the 30–day period following the issuance of our mandate affirming the BIA. We hold that it does.

### I.

The panel's decision reversed a practice that we have followed for many years without objection by the Immigration and Naturalization Service ("INS"). The long-standing practice was to permit an alien afforded the right of voluntary departure by the BIA the opportunity to depart voluntarily until a fixed time after the issuance of our mandate affirming the order of deportation. More precisely, the period did not end until the number of days after the mandate equal to the number of days for voluntary departure set forth in the BIA's order. In some cases, we elucidated this practice in our opinions; in others, we merely assumed that the alien would be afforded this opportunity. The INS acknowledges that it has long followed the practice of allowing aliens originally granted voluntary departure to depart voluntarily until a fixed time after the issuance of our mandate. However, the INS maintains that it has followed this practice only when the alien filed a petition for review within the voluntary departure period originally granted. The INS concedes that it has never announced or published this limitation, nor has it communicated this limitation to aliens at the time of the deportation order and the grant of voluntary departure. The decisions of our court have never made this distinction.

The discretionary award of voluntary departure is significant for several reasons. First, it allows the alien to avoid the stigma of compulsory ejection. Second, it permits the alien to select his or her own destination. But, most importantly, the grant of voluntary departure facilitates the possibility of return to the United States. *Tzantarmas v. United States,* 402 F.2d 163, 165 n. 1 (9th Cir.1968), *cert. denied,* 394 U.S. 966, 89 S.Ct. 1312, 22 L.Ed.2d 569 (1969); 2 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 7.2a, at 7–19 (1987). An alien who voluntarily departs may return immediately, for example, as the beneficiary of an immigrant visa based on the marriage to a United States citizen. Conversely, a deported alien must seek special permission to return to the United States, *see* 8 U.S.C.A. § 1182(a)(17) (West Supp. 1987), and may face criminal penalties for the failure to do so, 8 U.S.C. § 1326 (1982).

### II.

Petitioner, Contreras–Aragon, is a citizen of El Salvador who entered the United

States on April 10, 1983. He was subsequently apprehended and charged with deportability for entry without inspection under 8 U.S.C. § 1251(a)(2) (1982). At his deportation hearing, held June 14, 1983, petitioner conceded deportability; he also sought asylum (*see* 8 U.S.C. § 1158(a) (1982)) and withholding of deportation (*see* 8 U.S.C. § 1253(h) (1982)). The immigration judge ("IJ") denied both requests and ordered petitioner deported.

Petitioner appealed the ruling of the IJ to the BIA. On June 4, 1985, the BIA affirmed the IJ's decision, with the exception that it granted petitioner 30 days in which to voluntarily depart from the United States. *See* 8 U.S.C. § 1254(e) (1982).

On July 15, 1985, Contreras–Aragon filed a petition for review of the BIA's decision with this court. July 15 fell within the six-month period for filing a petition for review prescribed by 8 U.S.C. § 1105a(a)(1) (1982), but it was 41 days after the entry of the BIA's deportation order, which included the 30–day voluntary departure provision.

Contreras–Aragon's petition to this court challenged the BIA's denial of asylum and its refusal to withhold deportation. His petition also asked the court to "reinstate" the BIA's grant of voluntary departure in the event the court chose to affirm the BIA's deportation order.

▮ The panel upheld the BIA's decision refusing to grant both asylum and withholding of deportation. *Contreras–Aragon v. INS*, 789 F.2d 777, 778 (9th Cir.1986). While we have serious reservations about that part of the decision, we do not reach the merits of those issues.[1] This en banc review focuses on the panel's refusal to "reinstate" the BIA's grant of voluntary departure or, viewed more accurately, its retroactive termination of the alien's right of voluntary departure. The panel refused to "reinstate" after concluding that the voluntary departure period had expired prior to the date of its decision.

---

**1.** We need not address the merits because, following the first panel's decision in this case, petitioner made a brief (72–hour) sortie to Mexico where he was granted an immigrant visa on May 27, 1986 by virtue of his marriage to an American citizen. We must, however, determine whether petitioner was entitled to voluntary departure when he made his trip to Mexico to obtain the visa, as that determination affects the validity of the visa. As we hold that he was entitled to voluntary departure when the first panel heard his case, we deem his departure "voluntary"; had he left under a deportation order, he would not have been able to return to the United States.

The INS belatedly suggests that Contreras–Aragon's departure divests us of jurisdiction of this matter. *See Thorsteinsson v. INS*, 724 F.2d 1365, 1367 (9th Cir.), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2386, 81 L.Ed.2d 345 (1984); *Hernandez–Almanza v. United States Dept. of Justice*, 547 F.2d 100, 103 (9th Cir.1976).

It is true that the statute and the regulations preclude judicial review of deportation orders in cases in which the alien seeking review has departed from the United States. Section 106(c) of the Immigration and Naturalization Act (the "Act") provides that we shall not review any order of deportation if the alien "has departed from the United States. . . ." 8 U.S.C. § 1105a(c) (1982). Consistent with this provision, 8 C.F.R. § 3.4 (1988) states:

> Departure from the United States of a person who is the subject [of] deportation proceedings subsequent to the taking of an appeal but prior to a decision thereon shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

However, the statute, the regulations, and the cases cited by the INS do not apply to the circumstances of the present case. This is not a case in which the alien departed the country without appealing, or prior to the decision on appeal. Rather, Contreras–Aragon made a brief visit to Mexico *after* the original three–member panel of our court rendered its decision on May 12, 1986. Subsequently, we took this case en banc to correct the original panel's erroneous termination of the privilege of voluntary departure. The petitioner did not request us to take the case en banc and was very likely unaware of that development when he left the country. He does not now contest the merits of the deportability determination; the only issue before us is the legal effect of the uncontested voluntary departure order. Thus, the unique circumstances of his appeal do not deprive us of jurisdiction, as we cannot conceive that the drafters of the legislation contemplated the situation at hand. To construe the statute as urged by the INS amounts to no less than sterile formalism. Thus, we find the jurisdiction limitation inapplicable to our *sua sponte* decision to correct the error of our earlier panel. We simply vacate the erroneous construction given the BIA's voluntary departure order by the panel and afford that order the construction which we have heretofore customarily given other similar orders. We also order the panel opinion withdrawn.

*See Contreras–Aragon,* 789 F.2d at 779. The panel implied that a voluntary departure period runs from the time the award is initially granted; it then expires and is unaffected by the alien's appeal of the deportation order. The holding conflicts with a line of Ninth Circuit cases in which this court has expressly provided that when timely review of the deportation order is sought the voluntary departure period originally granted by the BIA does not terminate until after the issuance of the mandate affirming the BIA. *See Benitez–Mendez v. INS,* 760 F.2d 907, 910 (9th Cir.1983) (as amended 1985); *Abedi–Tajrishi v. INS,* 752 F.2d 441, 444 (9th Cir.1985); *Shahla v. INS,* 749 F.2d 561, 563 (9th Cir.1984); *De Reynoso v. INS,* 627 F.2d 958, 960 (9th Cir.1980); *Khalil v. INS,* 457 F.2d 1276, 1278 (9th Cir.1972); *accord Aiyadurai v. INS,* 683 F.2d 1195, 1201 (8th Cir.1982).

The analysis for this result has not been clearly expressed, and there is some confusion concerning the operation of the voluntary departure provision in a deportation order. The use of the word "reinstate," with reference to voluntary departure originally granted by the BIA, creates part of the problem. As we view the matter, in affirming the order of the BIA, we affirm the order in total, including its grant of voluntary departure, the period for which does not expire until after the date the order of deportation becomes operative by the issuance of our mandate. We are not "reinstating" in the sense that we are exercising any discretion properly exercised by the BIA; rather, we are simply affirming the order of deportation with its provision for alternative discretionary relief.

### III.

■ Section 106(a) of the Act, 8 U.S.C. § 1105a(a) (1982), provides for judicial review of final orders of deportation. It vests exclusive jurisdiction for such review in the courts of appeal. The Supreme Court has held that this jurisdiction extends to all matters decided in the course of a deportation proceeding, including determinations on requests for discretionary relief. *Foti v. INS,* 375 U.S. 217, 229, 232, 84 S.Ct. 306, 313, 315, 11 L.Ed.2d 281 (1963). The result of the deportation hearing, including the discretionary determinations, is one final order of deportation reviewable by the courts of appeals.

> The hearings on deportability and on an application for discretionary relief have, as a matter of traditional uniform practice, been held in one proceeding before the same special inquiry officer, resulting in *one final order of deportation.*

*Id.* at 223, 84 S.Ct. at 310 (emphasis added). It is clear that a determination concerning voluntary departure is one of those determinations made during the deportation hearing that form a part of the final order of deportation, *id.* at 229, 84 S.Ct. at 313. The Court took special pains to point out that "determinations of deportability" are distinguished from the broader category of "final orders of deportation," which includes other determinations in the deportation proceedings. *See id.* at 228, 84 S.Ct. at 313. Thus, it is important to emphasize that we are here concerned with one final order of deportation that includes a determination concerning voluntary departure.

The jurisdictional section also provides for an automatic stay of deportation upon the filing of a petition for review. *See* 8 U.S.C. § 1105a(a)(3) (1982). By providing an automatic stay, Congress eliminated the need for aliens to seek discretionary relief from deportation during the pendency of the petition for review in our court. We cannot conceive that Congress made such provision but intended to require aliens granted voluntary departure to seek repeated extensions of the voluntary departure period from the district director, in order to preserve the award of voluntary departure until our final determination on the deportation order. Rather it seems evident to us that the right of voluntary departure remains in effect throughout the period of our review and for whatever additional period the BIA afforded the alien in the order under review.

An unqualified affirmance of the order of deportation consequently entails approval of the grant of voluntary departure. This approach is consistent with *Foti.*

There, the Supreme Court was faced with the question of whether a refusal by the Attorney General to grant a suspension of deportation is "one of those 'final orders of deportation' of which direct review by Courts of Appeals is authorized under § 106(a) of the Act." *Foti,* 375 U.S. at 221, 84 S.Ct. at 309. Section 106(a) vests jurisdiction in the court of appeals for review of "all final orders of deportation ... made against aliens ... pursuant to administrative proceedings under section 242(b) of this Act...." *See* 8 U.S.C. § 1105a(a). Though by its own terms the grant of jurisdiction is limited to orders arising out of section 242 deportation proceedings, the Court extended the jurisdiction to include decisions regarding discretionary relief. *Foti,* 375 U.S. at 229, 84 S.Ct. at 313.

Not only does the rule we adopt conform to the Supreme Court's analysis in *Foti,* it is also consistent with our past treatment of the question. *See, e.g., Abedi–Tajrishi, Shahla, De Reynoso, Khalil,* and *Benitez–Mendez.* In all of those cases, we affirmed the final order of deportation including the award of voluntary departure previously granted by the BIA; upon our affirmance, the number of days for voluntary departure initially afforded by the BIA commenced to run.

■■■ The INS claims that the approach we adopt exceeds our authority by usurping the discretion delegated to the INS by the Attorney General. Contrary to the INS's assertions, the approach falls squarely within our function as a judicial body. We do not affirmatively grant voluntary departure, but only review the grant previously made by the INS. Our authority to review this discretionary relief is beyond challenge.[2] In reviewing the grant, we are simply reviewing what is before us, following *Foti*'s guidance that review of a final order of deportation encompasses review of concomitant discretionary relief. Natural-

ly, the voluntary departure period commences when our mandate upholding the grant of voluntary departure issues.

## IV.

There are two other suggested approaches to govern when the period for voluntary departure commences and ends. We review these in detail to point out their weaknesses.

### A. *The Panel's Approach.*

The panel's decision concluded that the order granting voluntary departure expired 30 days after the entry of the BIA's deportation order. The panel apparently believed that to allow the alien to avail himself of his original voluntary departure period commencing from the entry of our mandate affirming the deportation order, would be tantamount to granting a new voluntary departure date, thus invading the discretion reserved for the Attorney General and his designees.

Realistically, the panel's decision would force the alien to choose between voluntary departure and taking an appeal, because the period of voluntary departure would expire before the appellate review could possibly be concluded. The panel's approach would condition the grant of voluntary departure on the alien's relinquishment of his right to judicial review. The panel apparently recognized this, because it quoted with approval a statement from one of the BIA's unpublished decisions that "[t]he purpose of authorizing voluntary departure in lieu of deportation is to effect the alien's prompt departure without further trouble to the Service." *Contreras–Aragon,* 789 F.2d at 779 n. 3 (quoting *Wang Ching Fui* (August 21, 1969 unpublished decision)). This raises the serious question of whether voluntary departure can be used as an enticement to induce the alien to forego judicial review.

2. We have the authority to review a refusal to grant voluntary departure, and also to review the amount of time given for voluntary departure. We review both for an abuse of discretion. *See Villanueva–Franco v. INS,* 802 F.2d 327, 328–29 (9th Cir.1986) (reviewing denial of voluntary departure); *Cruz–Lopez v. INS,* 802 F.2d 1518, 1522 (4th Cir.1986) (reviewing period of voluntary departure). The inquiry in those instances is whether the BIA abused its discretion at the time it made its decision. Here, the award of voluntary departure is uncontested, but forms a part of the final order of deportation under review.

In answering this question, it is important to distinguish two types of voluntary departure that may be granted under the Act. The first is authorized by section 242(b) of the Act, 8 U.S.C. § 1252(b) (1982). This section vests the Attorney General with discretion to award voluntary departure in lieu of *initiating* deportation proceedings. The Attorney General has delegated this authority to district directors, district officers who are in charge of investigations, officers in charge, and chief patrol agents. 8 C.F.R. § 242.5(a) (1987). This procedure has been called a "rough immigration equivalent of a guilty plea," in that the alien knowingly waives his rights to a hearing in exchange for the certainty of being able to depart voluntarily, rather than under an order of deportation. D.A. Martin, *Major Issues in Immigration Law* 72 (Federal Judicial Center 1987). The INS requires the alien to sign a Voluntary Departure Form I–274, in which he waives the right to a deportation hearing and all alternative forms of relief. *See Perez–Funez v. District Director, I.N.S.*, 619 F.Supp. 656, 658 (C.D.Cal.1985). An application for voluntary departure under this section must be made prior to the commencement of the deportation hearing and no appeal lies from the denial of the application under this section; however, the denial does not prejudice a request for voluntary departure under other provisions of the law. 8 C.F.R. § 242.5(b) (1987).

The second provision authorizing a grant of voluntary departure is found in section 244(e) of the Act, 8 U.S.C. § 1254(e) (1982). That section grants the Attorney General discretion to award voluntary departure to aliens who are engaged in deportation proceedings. The delegation and implementation of that authority is provided for in 8 C.F.R. §§ 242.17(b), 244.1, and 244.2 (1987). It is apparent from these regulations that the IJ or the BIA may initially grant the voluntary departure, but an extension of the departure period is within the sole jurisdiction of the district director.

The distinction between the voluntary departure authorized under sections 242(b) and 244(e) of the Act is vital. It may well be the purpose of section 242(b) to encourage the alien to depart before institution of deportation proceedings "without further trouble to the Service." Voluntary departure under section 242(b) is available to an alien who knowingly waives his right to a deportation hearing in exchange for a guarantee of being able to depart voluntarily.

The grant of voluntary departure with which we are concerned—that authorized under section 244(e)—presents an entirely different situation. The alien has sought a hearing and has requested alternative discretionary relief; he has waived nothing. Yet under the panel's interpretation, the BIA's order amounts to the following:

> Contreras–Aragon is granted the right to voluntarily depart, provided he does not seek judicial review.

Could such an order be sustained?

Courts have long recognized that a judicial officer may not exact a price for the taking of an appeal. *See North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969); *Worcester v. Commissioner*, 370 F.2d 713, 718 (1st Cir. 1966); and *Short v. United States*, 344 F.2d 550, 552 (D.C.Cir.1965). As the Supreme Court said in the context of criminal proceedings, "the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal ... would be ... a violation of due process of law.... A defendant's exercise of a right of appeal must be free and unfettered...." *Pearce*, 395 U.S. at 724, 89 S.Ct. at 2080. The statutory provision for appeal from deportation orders furnishes no less of a right. *See United States v. Mendoza–Lopez*, — U.S. —, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987) (referring to an alien's "right to have the disposition in a deportation hearing reviewed in a judicial forum"). Moreover, we have held that the INS may not condition voluntary departure upon the relinquishment of a protected right. *See, e.g., Israel v. INS*, 785 F.2d 738, 742 n. 8 (9th Cir.1986) (implicated privacy rights prevent the INS from conditioning the grant of voluntary departure on the alien's

promise not to marry a United States citizen within that period).

We would drastically depart from these principles were we to sanction a policy which effectively forced the alien to choose between exercising an award of voluntary departure and pursuing judicial review. Forcing the alien to abandon the possibility of voluntary departure in order to seek review of the BIA's decision places too dear a price on the right to judicial review, a price which we cannot condone.

The Second Circuit expressed similar sentiments in *Ballenilla–Gonzalez v. INS*, 546 F.2d 515 (2d Cir.1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 75 (1977), where it stated,

> [D]iscretion [to grant voluntary departures] should not be used by the Board to insulate its decisions and procedures from constitutional or statutory challenge. If an alien has a facially meritorious claim going to the validity of a deportation order, he or she should not be discouraged from seeking review by the offer of voluntary departure on terms that will evaporate if the appeal is pursued. The result would be to penalize an alien in the bona fide, nonfrivolous exercise of a constitutional right.

*Id.* at 521.[3]

The BIA itself has avoided placing the alien in the dilemma of choosing between the right to an administrative appeal and the IJ's grant of voluntary departure. The BIA has held that a timely appeal of the IJ's decision to the BIA tolls the running of the departure period. *Matter of Villegas Aguirre*, 13 I. & N. Dec. 139, 140 (BIA 1969). A subsequent decision of the BIA stated that the *Aguirre* holding "was designed to guard against any possibility that the taking of an appeal might result in the loss of the privilege of voluntary departure.... The alien in deportation proceedings must be assured that he will not risk losing a grant of voluntary departure by filing an appeal from an adverse decision of an immigration judge." *Matter of Chouliaris*, 16 I. & N. Dec. 168, 169–70 (BIA 1977).[4]

If the BIA's order granting voluntary departure were conditional upon the alien waiving his or her right of judicial review, it would not only be inconsistent with the policy on appeals from the IJ to the BIA, but it would amount to an abuse of discretion by requiring the alien to waive a fundamental right. We cannot endorse the panel's approach because it effectively leads to this same result.

### B. *The INS Position.*

■ Under the "tolling"[5] policy of the INS, petitioning for judicial review within the period for voluntary departure preserves the alien's right to voluntarily depart upon the outcome of the judicial review; however, this right is extinguished if the alien fails to petition for judicial review within the departure period. Thus, the only period in which an alien may seek

---

**3.** The court went on to hold that the alien no longer had the privilege of voluntary departure because her appeal was frivolous. *Id.* at 522. Although we firmly agree with the Second Circuit that the right to judicial review should not be burdened with an offer of voluntary departure that evaporates if judicial review is sought, we do not agree that the privilege of voluntary departure granted by the BIA can be terminated as a sanction if the appeal is determined to be frivolous.

**4.** The *Aguirre* decision provided that in order for the voluntary departure period to be tolled, the appeal must be filed within the time permitted for voluntary departure. This will invariably be the case since the appeal period is only ten days, *see* 8 C.F.R. § 242.21(a) (1988), and the corresponding voluntary departure period is rarely less than 30 days. The *Chouliaris* decision also added the proviso that if the voluntary departure period was 30 days or less, the same period would be allowed, and, if it were longer, the alien would be allowed 30 days from the date of the BIA decision within which to depart. *Chouliaris*, 16 I. & N. at 170. This is of no consequence for judicial review, however, since the order we review is the order of the BIA, which provides the specific voluntary departure period.

**5.** "Tolling," in the sense used by the INS, is the preservation of the entire voluntary departure period granted by the BIA. There is no contention that "tolling" preserves only that portion of the voluntary departure period which had not lapsed prior to filing for review. That is not the practice followed by the BIA in appeals from the decision of the IJ.

judicial review unconditionally is that period set by the INS for voluntary departure, for that is the only time in which judicial review is unfettered by loss of voluntary departure.

We first observe that this policy has no effect on discouraging frivolous petitions for judicial review; it simply means that the petition for review must be filed earlier in order to preserve the grant of voluntary departure. No authority for such a policy is cited, and no notice of such a policy is given to the alien by any statute or regulation.

We cannot sanction the tolling policy because of its unacceptable consequences. The effect of the policy is to shorten the statutory six-month period within which the alien may seek review. *See* 8 U.S.C. § 1252(c) (1982). No statutory authorization justifies such a procedure. Furthermore, the tolling policy would permit the BIA to vary the allowable period for appellate review from one alien to another. If the consequence of the rule is to make the appeal period equivalent to the period allowed for voluntary departure, different aliens will, in effect, be allowed different periods within which to file for review. Such a rule is inherently vulnerable to abuse and discrepant application. Taken alone, the award of different voluntary departure periods for different aliens is legitimate because the grant of voluntary departure is conditional upon, and should be tailored to, an alien's individual circumstances. However, when these different departure periods are transformed by means of a tolling policy into allowable periods for filing an unconditional appeal, the result is unconscionable. Appeal periods most certainly should not be subject to variation according to individual circumstances. Our principles of justice dictate that appellate review, where available, should be available on a uniform basis. It is antithetical to this principle to allow the INS effectively to set different periods in which different aliens may seek review—a result which follows directly from the INS rule.

More fundamentally, this approach ignores the dictate of *Foti*—that one final order of deportation is under review once a petition has been filed within the six-month period. It is that final order of deportation with its provision for voluntary departure that is before the court. Nothing in that order is dependent upon filing the petition for review on a date earlier than specified in the statute.

## C. *The Court's Ruling*

Viewing the award of voluntary departure as part of the deportation order, both of which are before us on review of a "final order of deportation," is not only consistent with *Foti*, but it is the only approach that does not infringe on the alien's right to appeal, reduce the statutory period allowed by Congress in which to petition for review, or allow the INS effectively to set different time periods within which to petition for different aliens.

The INS argues that the rule we adopt today will encourage frivolous appeals and dilatory tactics. It claims that if deportable aliens are assured that voluntary departure will be preserved upon filing a petition for review, there would remain little incentive for the aliens to leave this country within the period initially granted by the INS. This concern merely begs the question of whether voluntary departure can be conditioned upon waiving the right to appeal or reducing the period within which the alien can appeal. We must not, in our zeal to discourage frivolous appeals, unduly circumscribe the right to appeal and, in so doing, inhibit the taking of meritorious appeals. Moreover, the INS does not explain why its tolling policy, which preserves voluntary departure if an appeal is taken within the voluntary departure period, is not also subject to the same criticism it levels at our position.

Finally, we note that our decision will not significantly extend the alien's stay in this country. In actuality, the period of post-mandate voluntary departure (normally 30 days) adds very little to the time during which the alien can avoid deportation. As provided by statute, the deportation order

is stayed pending an appeal. 8 U.S.C. § 1105a(a)(3). The post-mandate period of voluntary departure will typically amount to only a fraction of the time during which the alien was not deportable while his case awaited our review.

### V.

We therefore hold that the voluntary departure period does not expire until after our affirmance of the deportation order. When a final order of deportation is before us on appeal, we review the order in its entirety. Because a final order of deportation encompasses any award of voluntary departure made during or incident to the proceedings, that award is also before us on review. If we affirm the deportation order, the grant of voluntary departure is ordinarily affirmed as well, and the voluntary departure period terminates at a specified time after issuance of our mandate.

We hold that Contreras–Aragon was entitled to affirmance of his order of voluntary departure when the first panel affirmed his order of deportation.

The order of voluntary departure is AF-FIRMED

The panel's opinion, reported at 789 F.2d 777 is ordered WITHDRAWN

GOODWIN, Circuit Judge, concurring in part:

I concur in the majority opinion with the exception of Part IV, which I believe is unnecessary to the decision.

POOLE, Circuit Judge, dissenting:

I do not question the majority's sincerity or its purpose to ameliorate what it deems to be a harsh facet of the immigration laws. But no matter how intellectually crafted the majority opinion, I disagree with its conclusion because it is a very present fact that only the Attorney General of the United States, or his designee, has the authority by law to grant to an alien the privilege of voluntary departure. That

authority has in fact been given to the Board of Immigration Appeals. Thus designated, the Board granted a 30–day voluntary departure to the petitioner. He neither departed within that time nor sought an extension from the Board. As Judge Kozinski has pointed out in his dissent, the order of extension expired by its own terms. I do not think we can give it resurrection. If the Congress had authorized the United States Courts of Appeals to grant voluntary departure, I would concur in a decision doing so. We do not have the authority; we should not venture to create such power.

With deference to the majority of this en banc court, I believe today's opinion to be erroneous. Therefore, I respectfully dissent.

KOZINSKI, Circuit Judge, with whom SNEED, Circuit Judge, joins, dissenting:

There is no mystery about what the majority is doing in this case: It is reinstating a grant of voluntary departure that long ago expired. That's what petitioner asks us to do, see Petitioner's Opening Brief at 36; Petitioner's Brief for Rehearing En Banc at 4, 11, 13, 14;[1] that's what the original panel held we had no authority to do, see Contreras–Aragon v. INS, 789 F.2d 777, 779 (9th Cir.1986); that's what we ordered the parties to brief upon taking the case en banc, see Order of Mar. 10, 1987 (parties to brief "whether this court may reinstate a lapsed grant of voluntary departure"). That's what this case is all about.

Daunted, perhaps, by the fact that neither statute nor regulation nor Supreme Court opinion authorizes such an action, the majority disavows any intention of reinstating anything, purporting merely to affirm the grant of voluntary departure once issued by the BIA. Since we surely have the power to review and affirm, the majority claims, we are doing nothing extraordinary or unprecedented; we are merely per-

---

1. Petitioner's most recent filing succinctly summarized the issue. He asked the court "to fashion a specific, limited grant of reinstatement of a lapsed grant of voluntary departure *nunc pro tunc.*" Petitioner's Brief on Rehearing En Banc at 14.

forming our normal function of judicial review.

Saying so won't make it so.

Courts, particularly federal courts, have broad powers indeed. Not among them, however, is the power to repeal the laws of logic, or change the rules of English grammar and syntax, or alter the meaning of words and concepts. It matters only what a court does, not what it says it does. And what the court does here is to breathe new life into an order of voluntary departure that expired long ago. Calling an ostrich an eagle won't make it fly; calling a reinstatement an affirmance won't make it lawful. Because the majority *in fact* exercises a power it concedes it does not have, I respectfully, but emphatically, dissent.

I

First things first. By statute the only one who has authority to grant an alien the privilege of voluntary departure is the Attorney General. 8 U.S.C. §§ 1252(b), 1254(e) (1982). The Attorney General may delegate this authority to "any officer or employee of the Department of Justice." *Id.* § 1103(a). Because we are neither the Attorney General nor officers or employees of the Department of Justice, the statute denies us authority to grant voluntary departure to anyone. This much, it seems, everyone agrees on. Majority Op. at 1094.

The BIA, acting pursuant to delegation from the Attorney General, 8 C.F.R. §§ 3.1(b)(2), 242.17(b), 244.1 (1987), granted petitioner the right to depart voluntarily for a limited period of time. The order permitted petitioner "to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director." *In re Contreras-Aragon,* No. A24919364, at 3 (BIA June 4, 1985) (BIA Decision). The BIA's order was dated June 4, 1985; petitioner has never asked for an extension. Reference to a standard Gregorian calendar reveals that the BIA's order expired no later than July 4, 1985, some three years ago.[2]

Here is where the majority and I part company. As I view it, the BIA's order having once lapsed, it can no longer authorize petitioner to depart voluntarily unless we *extend,* or *reinstate,* or *renew,* or *revive,* or *reissue* it, none of which we are authorized to do.[3] The majority, on the other hand, seems to think that it is sufficient for us merely to *affirm* the BIA's order, something we do have authority to do. Which raises the obvious question: What good does it do Mr. Contreras for us to affirm an order that has been dead and gone for three years? No good at all, of course. Indeed, mere affirmance of the

---

**2.** Filing a petition for review in this court did not toll the running of petitioner's voluntary departure period. Because no appeal was filed until July 15, 1985, the grant of voluntary departure terminated before we acquired jurisdiction. Moreover, even had petitioner appealed before the voluntary departure period expired, that period would be long gone by now. Unlike deportation orders, *see* 8 U.S.C. § 1105a(a)(3) (1982), voluntary departure orders are not automatically stayed pending judicial review.

**3.** Instead, the regulations vest this power in the INS district director, who has the exclusive authority to grant extensions or reinstatements in the circumstances of this case:

*Authority to reinstate or extend the time within which to depart voluntarily specified initially by ... the Board is within the sole discretion of the district director,* except that ... the Board may reinstate voluntary departure in a deportation proceeding that has been reopened for a purpose other than solely mak-

ing an application for voluntary departure. A request by an alien for reinstatement or an extension of time within which to depart voluntarily shall be filed with the district director having jurisdiction over the alien's place of residence. Written notice of the district director's decision shall be served upon the alien and *no appeal may be taken therefrom.*

52 Fed.Reg. 24,982 (1987) (amending 8 C.F.R. § 244.2) (emphasis added). The INS has ruled that the district director may grant extensions nunc pro tunc to aliens whose original voluntary departure period has lapsed, so long as they possess valid travel documents and a confirmed reservation for transportation and have not extended their stay in the United States "by means of obviously dilatory action in the courts or elsewhere." INS Operations Instruction 243.-1(a), *reprinted in* 4 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* 23-488.9 (1987).

June 4, 1985, BIA order would be so pointless that it would violate the constitutional requirement of a case or controversy, unless the court is in fact doing one of the things it claims it is not.

There is nothing else I need say about my substantive disagreement with the majority: The majority does precisely what it says it cannot. Its actions stand condemned by its own words.

But the majority does far more. In an effort to justify the unjustifiable, the majority commits a number of additional, very serious transgressions. While the question of our authority to reinstate petitioner's right to voluntary departure may or may not be terribly significant, the majority's other errors certainly are. Today's en banc opinion is a boulder cast upon the waters of the law; the waves it raises will be felt in distant and unexpected places. It is to these other errors that I now turn.

## II

A. As Justice Kennedy, speaking for a unanimous Court, reminded us only this Term, when the language of the statute is clear, that is the end of the matter. *Bethesda Hosp. Ass'n v. Bowen,* —— U.S. ——, 108 S.Ct. 1255, 1258, 99 L.Ed.2d 460 (1988). The language of the statute here could not be clearer in denying us authority to reinstate a lapsed grant of voluntary departure. *See* p. 1098 *supra.* Under *Bethesda* and a long line of prior cases, there is nothing left for us to do but apply that language as written.

Were the statutory language not entirely clear, it would be appropriate to resort to secondary authorities, such as committee reports or other legislative materials. *See, e.g., Dawson Chem. Co. v. Rohm & Haas*

*Co.,* 448 U.S. 176, 202–15, 100 S.Ct. 2601, 2616–23, 65 L.Ed.2d 696 (1980); *Muniz v. Hoffman,* 422 U.S. 454, 464–74, 95 S.Ct. 2178, 2184–89, 45 L.Ed.2d 319 (1975). Occasionally, courts rely on apparent inconsistencies between statutory provisions, *see, e.g., Federal Power Comm'n v. Panhandle E. Pipe Line Co.,* 337 U.S. 498, 513–14, 69 S.Ct. 1251, 1260–61, 93 L.Ed. 1499 (1949); *Love v. Thomas,* 838 F.2d 1059, 1065–67 (9th Cir.1988), or upon administrative interpretations that, over time, have gained the tacit approval of the legislature. *See, e.g., United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 135–37, 106 S.Ct. 455, 463–64, 88 L.Ed.2d 419 (1985); *CBS, Inc. v. FCC,* 453 U.S. 367, 382–85, 101 S.Ct. 2813, 2823–25, 69 L.Ed.2d 706 (1981).

The majority here relies on none of these things. What the majority does rely on is its own unwillingness to believe that Congress could have intended the result flowing from the plain language of the statute: "We cannot conceive that Congress ... intended to require aliens granted voluntary departure to seek repeated extensions of the voluntary departure period from the district director, in order to preserve the award of voluntary departure until our final determination on the deportation order." Majority Op. at 1092. The majority does not—and of course cannot—cite statutory language on which to base its conclusion; the statutory language, as noted above, is squarely to the contrary. Reliance on administrative interpretation is equally out of the question. But the majority also points to no committee report, floor statement, witness testimony or any other shred of evidence in the legislative record as a basis for its conclusion. Nothing at all.[4]

---

[4] More troubling still, the majority applies its unprecedented approach to statutory construction even to the fundamental question of our jurisdiction to decide this case. The governing statute provides that "[a]n order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order." 8 U.S.C. § 1105a(c) (1982). Because petitioner did in fact depart from the United States after the deportation order was issued, the majority seems to concede that the statute on its face deprives us of jurisdiction to hear this case. Majority Op. at 1091 n. 1. But the majority once again "cannot conceive" that the statute means what it says, dismissing the statutory language as "sterile formalism." *Id.* While a plausible rationale may exist for retaining jurisdiction over the case, the majority does not articulate it, falling back on its novel technique of statutory interpretation.

This, I respectfully submit, is a dangerous departure from established principles of statutory construction. While reasonable minds differ as to the relative weight to be given various manifestations of legislative intent, I am aware of no prior decision where the court formed an opinion as to what Congress meant based not on anything said by or to any legislator, or written in any committee report or in the statute itself, but rather on the court's own sense of incredulity. Indeed, all authority is to the contrary. *See, e.g., TVA v. Hill,* 437 U.S. 153, 172–74, 98 S.Ct. 2279, 2290–92, 57 L.Ed.2d 117 (1978) (enforcing plain language of statute to bar completion of $100 million dam despite "paradox" that halting construction would save only "a relatively small number of three-inch fish").

This is no quibble. When a court undertakes to divine the meaning of statutes based on nothing but its own sense of disbelief, it ceases interpreting the law and starts making it. It is unnecessary to point out here the unwisdom of this approach. Wise or not, this is not what we are commissioned to do. Making laws is the province of the political branches. When courts undertake to second-guess choices made by Congress and the President and clearly embodied in statutory language, they trench upon the authority of coordinate branches of government. As the Court stated in *TVA v. Hill*: "[I]n our constitutional system the commitment to the separation of powers is too fundamental for us to preempt congressional action by judicially decreeing what accords with 'common sense and the public weal.' Our Constitution vests such responsibilities in the political branches." 437 U.S. at 195, 98 S.Ct. at 2302. Under the majority's regime, no law, no matter how clear, is safe from redaction by the judiciary, and the courts become the ultimate source of legislative power. This is not how the Constitution is written.[5]

B. The majority also does violence to established principles of administrative review. The court asks "whether voluntary departure can be used as an enticement to induce the alien to forego judicial review," and whether petitioner may be "granted the right to voluntarily depart, provided he does not seek judicial review." Majority Op. at 1093. Having so posed the question, the majority answers it in the negative, concluding that this would place "too dear a price on the right to appeal, a price which we cannot condone." *Id.* at 1095. Indeed, the court finds it "unconscionable" and "antithetical" to "principles of justice" for the INS even to shorten the period an alien has to take an appeal as a condition for retaining the privilege of voluntary departure. *Id.* at 1096.

The majority's concerns are misplaced. To begin with, unless constitutional principles are implicated, a court's notion of what is fair and just has no relevance when Congress has spoken. More fundamentally, the court misperceives the issue. Petitioner was not given a choice between giving up voluntary departure and taking an appeal; nor was he required to file a notice of appeal early as a condition for preserving his privilege of departing voluntarily. He need only have sought an extension or reinstatement of his original grant of voluntary departure from the INS district director, a relatively simple and painless procedure.

Petitioner did not even have to make that request within the 30 days allotted for him to depart voluntarily, reasonable as that would have been; the district director may grant an extension or reinstatement at any time after the original grant has lapsed. *See* n. 3 *supra.* Petitioner has never requested this relief, even though the BIA's

---

5. The majority's assertion that Congress could not have intended for aliens to seek extensions from the district director while their appeal is pending before the court is, in any event, curious. Since an alien's eligibility for voluntary departure is dependent on the existence of certain facts, *see* n. 6 *infra,* it makes perfect sense to require the alien to seek renewal from an administrative body that can determine whether he continues to be eligible for the privilege. Congress surely would not have wanted to burden the courts with making that periodic determination; at the same time, it may not have wanted to extend the right to depart voluntarily for aliens who become ineligible because of a material change in circumstances.

order specifically advises him that the period of voluntary departure can be extended by the district director. BIA Decision at 3; *see also* 52 Fed.Reg. 24,982 (1987) (amending 8 C.F.R. § 244.2). Questioned about this at oral argument, petitioner's counsel admitted freely that it is still not too late:

> **The Court:** Can't you go to the district director?
>
> **Counsel:** Yes, you can, and—
>
> **The Court:** [inaudible] go to the district director.
>
> **Counsel:** You could go to the district director, again request a stay of deportation and also reinstatement of voluntary departure, but again, if the district director chooses not to grant you a stay and plans to deny—
>
> **The Court:** But he may grant it. In fact, is there, was there any bar to your asking that relief of the district director in all this time to date?
>
> **Counsel:** No.
>
> **The Court:** Is there any bar to your going down today and asking for that relief?
>
> **Counsel:** No.
>
> **The Court:** But you haven't done it.
>
> **Counsel:** No, I haven't, your Honors. I haven't felt that it was necessary to do that, as there may or may not be an outstanding order against Mr. Contreras, he does have his immigrant visa, I'm not sure what the government plans to do—
>
> **The Court:** But if you went to the district director and you got an order reinstating voluntary departure nunc pro tunc that would solve all your client's problems.
>
> **Counsel:** Yes, it would, your Honor.
>
> **The Court:** And it would surely render this case moot.
>
> **Counsel:** Yes, it would, your Honor.
>
> **The Court:** But you didn't try to do that.
>
> **Counsel:** No, I haven't, your Honor.

> **The Court:** And you're not planning to do it.
>
> **Counsel:** I haven't planned to do that in that—
>
> **The Court:** And if you do that you'll let us know.
>
> **Counsel:** ... I would like to see this court issue a ruling. Also, the district director would essentially not understand it all. He—it would be really complicated, believe me....

Transcript of Oral Argument En Banc (June 16, 1987).

Seldom do litigants so candidly admit their unwillingness to submit their claims to the administrative forum provided them by law. In light of this admission, the majority's rationale that petitioner would be required to give up his appeal in order to preserve the privilege of departing voluntarily is nothing short of astonishing. The opinion builds a snowman only to melt it with the heat of its rhetoric. In doing so, it undermines the heretofore unquestioned principle that a court will not act where the petitioner has failed to exhaust administrative remedies. *See, e.g., McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *see generally* 2 C. Gordon & H. Rosenfield, *supra* n. 3, § 8.4b.

To be sure, petitioner would run some risk in presenting his claim to the district director. For one thing, it would give the director an opportunity to determine whether petitioner continues to be eligible for voluntary departure.[6] Even if petitioner is eligible, the director may exercise his discretion against granting the relief sought. But these risks, it seems to me, are ones that the petitioner cannot avoid because the law places the responsibility for making these decisions upon the district director, not the court. Indeed, it is precisely because administrative agencies are equipped to make these determinations

---

**6.** Voluntary departure may be granted only to an alien who "is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure," 8 U.S.C. § 1254(e), and who "is willing and has the immediate means with which to depart promptly from the United States." 8 C.F.R. § 244.1. In order to obtain a nunc pro tunc extension from the district director, an alien must demonstrate his readiness and ability to depart and must not have extended his stay in the United States "by means of obviously dilatory action in the courts or elsewhere." INS Operations Instruction 243.1(a).

that courts must defer to them and compel litigants to present their claims to the agency first.

Petitioner's obstinate refusal to avail himself of the administrative remedies available to him—even as he admits that obtaining administrative relief would solve his problem and render this case moot—is curious to say the least. Counsel's suggestions that "it would be really complicated" and that the district director "would essentially not understand it all" make a mockery of the mechanisms Congress and the executive branch have established for dealing with precisely this issue. Quite possibly, petitioner's reluctance to submit his claim to the district director reflects facts unknown to us that now render him ineligible for the relief he seeks.

In any event, the majority's repeated assertion that petitioner is put to a hard choice between pursuing his right to judicial review and taking advantage of the privilege of voluntary departure is unfounded. Petitioner, like many others before him, could have partaken of both. In fact, he still can: He simply has to follow the path Congress and the INS have hewn for him. The majority fails even to acknowledge these procedures, treating them as if they were meaningless. This, I respectfully submit, is bad law and worse policy. It is, moreover, an unjustified slight to a coordinate branch of our government. If the court is bent on granting petitioner the relief he seeks, it should, at the very least, require petitioner to press his claim before the INS in the first instance to give that administrative body an opportunity to exercise the discretion entrusted to it by law.[7]

C. Finally, and most alarming, the majority gives this case a constitutional dimension it simply does not have. Without

quite saying so, the majority plainly holds that it would be constitutionally impermissible to force an alien to run the risk of losing the privilege of voluntary departure if he wishes to appeal his deportation. The majority is demonstrably wrong; its opinion ignores the one Supreme Court case that is squarely on point, and seriously misconstrues those cases it does rely on.

1. The majority asserts broadly that "[c]ourts have long recognized that a judicial officer may not exact a price for the taking of an appeal." Majority Op. at 1094. In support of this proposition it cites *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *Worcester v. Commissioner*, 370 F.2d 713 (1st Cir.1966), and *Short v. United States*, 344 F.2d 550 (D.C.Cir.1965). *Pearce* and *Short* hold that a court may not retaliate against a defendant for having successfully appealed by imposing a more severe sentence on remand. *Worcester* holds that a court may not threaten a convicted defendant with a substantial jail sentence if he chooses to appeal while promising him probation if he does not.

*Pearce*, the authoritative pronouncement in this area, does not establish the per se rule suggested by the majority. Even in criminal cases, the right to appeal may be burdened by the risk of a more severe sentence in case of reversal and retrial; the due process clause requires only that, if a more severe sentence is imposed, the sentencing judge adequately justify his decision. 395 U.S. at 726, 89 S.Ct. at 2081. A fair application of *Pearce* to INS cases would not render the voluntary departure scheme unconstitutional; it would only require that the district director's reasons for refusing to reinstate or extend a grant of voluntary departure be placed on the

---

7. Having said all that, it is not inappropriate to note that petitioner's case, as presented to us, is an appealing one for the exercise of administrative grace. The equities appear to have tilted more heavily in petitioner's favor since 1985: He is now married to a United States citizen and, if granted voluntary departure, would be well on his way to United States citizenship. *Cf.* 2 C. Gordon & H. Rosenfield, *supra* n. 3, § 7.2c, at 7–27 ("[f]avorable factors in individual cases,

such as close family ties in the United States, ordinarily will be decisive in the grant of relief"). Of course, it may be that, in passing on petitioner's request for voluntary departure, the INS will discover other facts that place him in a different light. *See* n. 6 *supra*. But if petitioner appears to the INS as he does before us, I would certainly expect the INS to exercise its discretion in favor of granting him the relief he seeks.

record, and that those reasons be unrelated to a vindictive attempt to penalize the alien for taking an appeal.

More to the point, however, *Pearce* is irrelevant to the case before us. As the Supreme Court has held, "[a] deportation proceeding is a purely civil action." *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984). Therefore, "various protections that apply in the context of a criminal trial do not apply in a deportation hearing." *Id.* Given the "purely civil" nature of this case, the relevant authority is not *Pearce* and its progeny but Supreme Court cases dealing with the burdens that may be placed on the right to appeal in *civil* cases.

In *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (per curiam), the Supreme Court considered due process and equal protection challenges to a mandatory $25 filing fee for the taking of a judicial appeal from an adverse determination of a state welfare agency. Appellants contended that they were indigents unable to pay the filing fee. *Id.* at 658, 93 S.Ct. at 1173. Thus, imposition of the filing fee effectively denied them their right to appeal.

The Court nonetheless upheld the fee, relying on two factors: First, appellants' claims did not implicate a fundamental constitutional right because they were only seeking increased welfare benefits. The Court distinguished *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), which held that a state could not require indigents to pay filing fees and process costs in order to obtain a judicially approved divorce while denying them any other means of obtaining a divorce. As the Court noted in *Ortwein,* appellants' interest in increased welfare benefits "has far less constitutional significance than the interest of the *Boddie* appellants," 410 U.S. at 659, 93 S.Ct. at 1174, which was predicated on "the special nature of the marital relationship and its concomitant associa-

tional interests." *Id.* at 658, 93 S.Ct. at 1173.

Second, the Court relied on the fact that appellants had already received an administrative hearing on the merits of their claim. Since "even in criminal cases, due process does not require a State to provide an appellate system," the fact that the filing fee effectively precluded appeal from the administrative agency's decision did not violate due process. *Id.* at 660, 93 S.Ct. at 1174.

*Ortwein* refutes the majority's conclusion that petitioner may not be forced to risk losing the privilege of voluntary departure when he chooses to appeal. If anything, petitioner's situation is far less compelling than that of the welfare claimants in *Ortwein;* they were denied all access to the courts, while petitioner is not. Even under the majority's strained hypothesis, the regulatory scheme does not prevent appeals, it merely allows for the possibility that the privilege of voluntary departure will be lost if an alien appeals the BIA's decision.[8] Only by shutting one's eyes to controlling authority can it possibly be said that this scheme violates due process. *See Ortwein,* 410 U.S. at 659–60, 93 S.Ct. at 1174–75; *Piatt v. MacDougall,* 773 F.2d 1032, 1034–35 (9th Cir.1985) (en banc) (appellate filing fee did not violate indigent plaintiff's constitutional rights where he had already received one hearing and his claim—for wages allegedly owed him by the state—did not implicate any fundamental interests).

2. Casting about for a convincing argument to justify the result it seeks to reach, the majority unsettles yet another area of constitutional law. The INS may grant voluntary departure at two points in deportation proceedings: first, before any hearing has been held; and second, after the BIA's decision but before judicial review. Both are intended to encourage the alien to

---

8. Under the government's approach, the burden is even lighter: to avoid any risk of forfeiting the grant of voluntary departure, petitioner need only have filed his petition for review within the 30 days the privilege was in force.

The effective burden on petitioner, a reduction of the time for filing the appeal, fades into insignificance when compared to the burden on the petitioners in *Ortwein.*

leave the country without further ado.[9] While the majority opinion speaks approvingly of the first practice, it condemns the second as a compelled waiver of the right to judicial review. Majority Op. at 1095. The distinction between the two, in the majority's view, is that in the first instance the alien "knowingly waives his right to a deportation hearing in exchange for a guarantee of being able to depart voluntarily," while after a hearing the alien "has waived nothing." *Id.* at 1095.

The majority advances a distinction without a difference. Whether before the initial hearing or before appeal, the alien would no doubt prefer to take advantage of his procedural rights while retaining the right to depart voluntarily if he is unsuccessful. At either point in the process, the INS would prefer to see the alien go quietly and save itself the burden and expense of further proceedings. The majority gives no persuasive reason for its assertion that the alien who chooses to depart voluntarily before a hearing effectively waives his right to procedural due process whereas the alien who is enticed into giving up an appeal "has waived nothing."

Indeed, if there is a distinction to be drawn between the two situations, it points to exactly the opposite conclusion. As the Supreme Court has repeatedly observed, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). The due process clause requires the opportunity for a hearing when government wishes to deprive us of our rights; it does not require the opportunity for an appeal. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983); *Ortwein,* 410 U.S. at 660, 93 S.Ct. at 1174. I do not understand how the regulations can impermissibly burden appeals when the identical burden on the right to any hearing at all is perfectly acceptable. *See Wiren v. Eide,* 542 F.2d 757, 763–64 (9th Cir.1976) (bond requirement that prevents indigents from obtaining any hearing at all violates due process, unlike filing fee requirements that prevent judicial appellate review of administrative hearings). The majority stands due process on its head.

3. The majority also appears to hold that the right to take an appeal in an immigration case is a fundamental right, like marriage or procreation, and therefore conditioning voluntary departure on its waiver is unconstitutional. Majority Op. at 1095; *see also id.* at 1094–1095 (citing *Israel v. INS,* 785 F.2d 738 (9th Cir.1986)).[10]

9. The BIA itself best explained the rationale for both types of voluntary departure:
   The purpose of authorizing voluntary departure in lieu of deportation is to effect the alien's prompt departure without further trouble to the Service. Both the aliens and the Service benefit thereby. But if the alien does not depart promptly, so that the Service becomes involved in further and more costly procedures by his attempts to continue his illegal stay here, the original benefit to the Service is lost. And if, after years of delay, he is again rewarded with the opportunity for voluntary departure which he has previously spurned, what incentive is there for any alien similarly circumstanced to depart promptly when first given the opportunity?
   *In re Wong Chung Pui* (BIA unpublished decision, Aug. 21, 1969), *quoted in Fan Wan Keung v. INS,* 434 F.2d 301, 304–05 (2d Cir.1970). The logic of the INS's position is unassailable.

10. The majority states, in dicta, that its rule applies even in the case of frivolous appeals. Majority Op. at 1095 n. 3. There is no attempt to explain this even in light of the majority's own rationale, and for good reason: Even if the right to appeal were, in general, a fundamental right, the same could not be said of the right to appeal frivolously. The majority would not dispute that persons who bring frivolous appeals may be penalized. *See, e.g.,* 28 U.S.C. §§ 1912, 1927 (1982); Fed.R.App.P. 38. The only distinction here is that the INS, not the courts, makes the determination of frivolousness. We have previously held that "[i]t is within the Board's competence to determine whether arguments advanced in administrative or judicial proceedings pursuant to a statute the Board is charged with administering are meritless." *Gonzalez Batoon v. INS,* 791 F.2d 681, 685 (9th Cir.1986) (en banc).

   In reaching out to decide the question of whether frivolous appeals can affect an alien's voluntary departure rights, the majority creates a conflict with the Second Circuit's decision in *Ballenilla–Gonzalez v. INS,* 546 F.2d 515 (2d Cir.1976), *cert. denied,* 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 75 (1977). That case, while noting

In *Israel* we noted that conditioning a grant of voluntary departure on an alien's promise not to marry a United States citizen amounted to "unjustified government interference in a personal decision relating to marriage," because the right to marry is a fundamental constitutional right. *Id.* at 742 n. 8 (citing *Zablocki v. Redhail,* 434 U.S. 374, 384, 98 S.Ct. 673, 680, 54 L.Ed.2d 618 (1978)). The majority apparently believes that the right of appeal is entitled to the same solicitude.

It is difficult to overstate the significance of this aspect of the majority's opinion. Heretofore, the category of fundamental rights, those the government could abridge only in ways "closely tailored" to effectuate "important" or "compelling" governmental interests, *see Zablocki,* 434 U.S. at 388, 98 S.Ct. at 682; *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969), has remained relatively narrow and well defined. In addition to those specifically enumerated in the Bill of Rights, it includes rights pertaining to marriage, *see Zablocki,* 434 U.S. at 384–86, 98 S.Ct. at 680–81, *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967); family relationships, *see Moore v. City of East Cleveland,* 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977); procreation, *see Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942); use of contraception, *see Griswold v. Connecticut,* 381 U.S. 479, 485–86, 85 S.Ct. 1678, 1682–83, 14 L.Ed.2d 510 (1965); child rearing and education, *see Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972), *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 573–74, 69 L.Ed. 1070 (1925), *Meyer v. Nebraska,* 262 U.S. 390, 399–401, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923); and personal autonomy, *see Shapiro v. Thompson,* 394 U.S. at 629–31 & n. 8, 89 S.Ct. at 1328–29 & n. 8 (right to travel).

The right to judicial review in an immigration case is cut from a wholly different cloth; it is far more akin to a variety of other rights not heretofore thought to be fundamental. *See, e.g., Ortwein,* 410 U.S. at 659–60, 93 S.Ct. at 1174–75 (right to judicial review of agency decision); *Lyng v. UAW,* ⸺ U.S. ⸺, 108 S.Ct. 1184, 1189–91, 99 L.Ed.2d 380 (1988) (right of striking workers to receive food stamps); *United States v. Barajas–Guillen,* 632 F.2d 749, 752–53 (9th Cir.1980) (alien's right to remain in United States or to be granted voluntary departure). By no stretch of the imagination is the right to judicial review after a full administrative hearing "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). The Supreme Court expressly repudiated that notion in *Ortwein.* By treating petitioner's right to judicial review as analogous to fundamental rights of the type addressed in *Israel* and *Zablocki,* the majority has opened the door to an endless variety of claims that look vaguely similar and can equally vie for the exalted status of fundamental rights.

### Conclusion

For the reasons stated above, I respectfully dissent.

---

in dicta that the INS should not deter aliens from bringing nonfrivolous appeals by forcing them to forego voluntary departure, held that aliens who pursue frivolous appeals are not entitled to reinstatement of voluntary departure. *Id.* at 521–22.