Sundararajan DURAISINGA,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 98–70556, 99–70970.
INS No. A72 537 613.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 2000.

Decided Feb. 1, 2001.

Before BOOCHEVER, REINHARDT,
and PAEZ, Circuit Judges.

## MEMORANDUM *

Sundararajan Duraisinga applied for asylum on the ground that in India, his home country, he was persecuted by a Tamil group from Sri Lanka (the Eelam People Liberation and Revolution Force, or "EPLRF"), because he supported a rival Sri Lankan Tamil group. He petitions for review of the orders denying his application for asylum (98–70556) and his motion to reopen (99–70970). Because the parties are familiar with the facts of this case, we will not repeat them here.

■ We have jurisdiction under 8 U.S.C. § 1105a(a). *See Ratnam v. INS,* 154 F.3d 990, 993 n. 1 (9th Cir.1998). When, as here, the Board of Immigration Appeals ("BIA") conducts a de novo review of the record, we review the BIA's decision rather than the decision of the Immigration Judge ("IJ"). *See Perez v. INS,* 96 F.3d 390, 392 (9th Cir.1996).

### I. Credibility Determination.

■ We must decide whether substantial evidence supports the BIA's determination that Duraisinga was not credible. *See Shah v. INS,* 220 F.3d 1062, 1067 (9th Cir.2000).

Although this standard is deferential, the BIA must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief. The reasons also must be substantial and bear a legitimate nexus to the finding that the petitioner is not credible.

*Id.* (quotations, internal alterations and citations omitted).

The BIA stated that Duraisinga testified inconsistently about his kidnaping, stating at various times that his kidnaping occurred in June 1990, January 1991, and November 1992. Second, the BIA noted that Duraisinga testified that he was hurt only "very slightly" when his car was bombed, although in his asylum application he stated he required extended hospitalization. Third, the BIA contrasted Duraisinga's testimony that three or four men beat and knifed him after pulling him off his motorbike, with his asylum application which stated that there was one attacker. Fourth, the BIA pointed out that although he testified that he was in hiding for a year, his asylum application did not mention any period of hiding at all.

■ While minor discrepancies are not enough to serve as the basis for an adverse credibility finding, *see id.* at 1068, these discrepancies are not minor, as they relate to the basic facts of most of the instances of persecution Duraisinga identified. When the IJ attempted to help Duraisinga clarify the date of his kidnaping, Duraisinga's answers remained confusing and contradictory. This is not a case where the IJ did not attempt to elicit more specific or clearer testimony from the applicant. *Compare Chand v. INS,* 222 F.3d 1066, 1074–75 (9th Cir.2000) (absence of detail in applicant's testimony is insignificant if IJ does not attempt to elicit specifics and develop record).

Further, the BIA did not rest its credibility determination entirely on these inconsistencies. It also noted that Duraisinga did not corroborate in any way his claim that he could not have resettled in another part of India. Duraisinga claimed that the EPLRF is found throughout India and in all levels of government, although he provided no evidence for that assertion. The letter from the Department of State acknowledged that although it had seen no reports to that effect, it was quite possible

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

there were some EPLRF sympathizers in India. Nevertheless, there was no evidence that EPLRF sympathizers were spread throughout the country and had thoroughly infiltrated the government. The country report and other evidence do not mention the presence of EPLRF members in India. The letter and the country report provide substantial evidence to support the BIA's conclusion that Duraisinga was not credible when he claimed that he would face persecution throughout India. *See Marcu v. INS,* 147 F.3d 1078, 1081–82 (9th Cir.1998) (state department letter and country report together are substantial evidence for BIA's decision regarding country conditions), *cert. denied,* 526 U.S. 1087, 119 S.Ct. 1496, 143 L.Ed.2d 650 (1999).

Finally, the BIA stated, without further explanation, that Duraisinga had failed to corroborate his claim that the EPLRF was still looking for him. This seems incorrect, as Duraisinga did testify that three months after he left India his mother told him that the EPLRF beat a friend of his while looking for Duraisinga. Thus there was at least some evidence that the EPLRF was still looking for him, and it is not clear what further corroboration the BIA would have required.

On balance, however, and given the deference accorded credibility findings, we conclude that there was substantial evidence to support the BIA's conclusion that Duraisinga was not credible.

II. *Motion to Reopen*

 Duraisinga's appeal to the BIA was dismissed on April 21, 1998. Five and one-half months later, on October 2, 1998, the INS approved an "Immigrant Petition for Alien Worker" filed on Duraisinga's behalf by his employer. On November 13, 1998, Duraisinga filed a Notice of Motion and Motion to Reopen his case with the BIA, asking the BIA to remand his case to the IJ to grant relief from deportation or allow him to apply for an adjustment of status, based on the "new evidence" of his approved labor certification. The BIA denied the motion because it was filed late. The 90–day period allowed for filing a motion to reopen a final decision of the Board expired on July 21, 1998.

 We review the ruling on a motion to reopen for an abuse of discretion, but questions of law such as the BIA's dismissal of such a motion on statute of limitation grounds are reviewed de novo. *See Shaar v. INS,* 141 F.3d 953, 955 (9th Cir.1998). A motion to reopen deportation proceedings must be filed no later than 90 days after the rendering of the final administrative decision. 8 C.F.R. § 3.2(c)(2). There are four enumerated exceptions to the time limit, *id.* at 3.2(c)(3)(i)-(iv), but none of those exceptions applies in this case. The BIA did not abuse its discretion in denying the motion to reopen.

## CONCLUSION

We affirm the denial of Duraisinga's asylum application because the adverse credibility decision was based on substantial evidence. We also affirm the denial of the motion to reopen.

The government granted Duraisinga thirty days for voluntary departure. The thirty-day period commences once our mandate in this action issues. *Contreras–Aragon v. INS,* 852 F.2d 1088, 1097 (9th Cir.1988). At oral argument, the government represented that if Duraisinga departs during the thirty-day voluntary departure period, he is authorized to return to India and adjust his status based on any approved visa petition. Furthermore, the government's counsel explicitly represented that it is the government's position that there is no statutory bar that would prevent Duraisinga from immediately adjust-

ing his status on his return to India. Accordingly, if Duraisinga voluntarily departs the United States, he is authorized immediately to adjust his status while abroad and then return to this country.

PETITION FOR REVIEW DENIED.