**Tilahun Fantaye DESTA, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**No. 03–70477.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2004.

Filed April 14, 2004.

Dario Aguirre, Linda Pollack, Aguirre Lappin & Grande, San Diego, CA, for the petitioner.

Janice K. Redfern, Christopher C. Fuller, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before HUG, JR., ALARCÓN, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge.

We review a denial of asylum for petitioner Tilahun Fantaye Desta. Desta applied for asylum after leaving Ethiopia, where he claims to have been beaten and imprisoned for his participation in two political groups that oppose the Ethiopian government. The Immigration Judge ("IJ") found Desta not credible and denied his application. The Board of Immigration Appeals ("BIA") affirmed. Desta timely petitioned this court for a review of the BIA's decision. Because the BIA's decision (and the IJ's decision underlying it) is supported by substantial evidence, we deny Desta's petition for review.

In addition to denying Desta's application for asylum, the IJ granted Desta a sixty-day voluntary departure period, beginning on the date of his decision on Desta's application for asylum. The BIA then renewed the voluntary departure period, granting Desta thirty days to depart, now beginning on the date of the BIA's decision. Twenty-five days after the BIA's decision, Desta moved in this court for a stay of removal. The government filed a statement of non-opposition, and we continued the temporary stay of removal pursuant to this circuit's General Order 6.4(c). Desta later filed a motion to stay voluntary departure, but when he filed this motion his thirty-day voluntary departure period had expired. The substantive standards are the same for granting a motion to stay removal and a motion to stay voluntary departure.

We construe Desta's motion to stay removal, filed within the thirty-day period, as including a timely motion to stay voluntary departure. Thus we hold that the temporary stay continued under General Order 6.4(c) stays not only removal but also voluntary departure. The stay of voluntary departure preserves the number of

remaining days Desta had to depart voluntarily while we consider the merits of Desta's petition for review.

## I. Background

Desta entered the United States on a tourist visa on July 13, 1996. He applied for asylum, but the application was denied, and the former Immigration and Naturalization Service ("INS")[1] instituted removal proceedings. In the removal proceedings, Desta requested asylum and withholding of removal.

Desta and his former wife are from the Addis Ababa area of Ethiopia, and are Amaric, a minority group in Ethiopia. Desta testified at the hearing before the IJ that he was a member of the All Ahmara People's Organization ("AAPO") as well as the Ethiopian Medhin Democratic Party ("Medhin"), both of which have been critical of the Ethiopian government. Desta testified that he provided monetary and logistical support to these organizations, and offered as proof letters purporting to confirm his membership in these organizations as well as a purported AAPO membership card.

According to Desta's testimony, on May 29, 1995, at 2 a.m., government officials arrested Desta and interrogated him about supposed anti-government activities. During the course of the interrogation, he was forced to run barefoot on rocks and was put in a barrel filled with cold, smelly water. Following the interrogation, Desta was placed upside down in a chair suspended from the ceiling and was beaten on the bottoms of his feet. This continued until he was unconscious. When he was released three days later, he was treated by his physician for a broken toe, and placed in a cast for two months.

According to his testimony, Desta was again arrested on August 10, 1995. While in custody, he was forced to sign a document admitting allegations of participation in an "anti-peace" movement, and as a result was sentenced to three months in jail. During this period, he was temporarily released to work as a "load master" in London for three days for Ethiopian Airlines, his employer both before and after he was jailed. Desta's then-wife testified before the IJ that she was taken into custody by government officials while Desta was in jail. While in custody, she was questioned about her husband's activities, and subsequently raped. Following his release from jail, Desta worked for Ethiopian Airlines for approximately one year. He then came to the United States.

The IJ denied Desta's application for asylum and withholding of removal based on an adverse credibility finding. The IJ concluded that the letters documenting Desta's membership in the AAPO and Medhin, and his AAPO membership card, were "possibly" fraudulent. He also pointed to inconsistencies in Desta's testimony as to how long he wore his cast, and to inconsistencies about the date on which his former wife had been raped. Finally, the IJ found it "implausible" that the Ethiopian government had forced Desta to work as a load master in London during the period he was otherwise in jail.

The IJ denied Desta's request for asylum and withholding of removal, but granted Desta's request for voluntary departure. On January 8, 2003, in an order adopting the decision of the IJ as its own, the BIA affirmed both the denial of the application for asylum and withholding of removal, as well as the grant of voluntary departure. The BIA gave Desta thirty

---

**1.** John Ashcroft, Attorney General, is substituted for the INS as the proper respondent.

Fed. R.App. P. 43(c)(2). The INS ceased to exist on March 1, 2003.

days from the date of its decision to depart voluntarily from the United States.

Desta timely petitioned to this court for review of the BIA's decision. He filed a motion to stay removal on February 3, 2003, twenty-five days after the BIA's decision. The Attorney General filed a notice of non-opposition, and in accordance with the procedures laid out in *De Leon v. INS*, 115 F.3d 643 (9th Cir.1997), and this circuit's General Order 6.4(c), this court continued the temporary stay of removal on March 31, 2003. On November 7, 2003, Desta filed a motion to stay voluntary departure which was opposed by the Attorney General.

## II. Asylum Application

■ To be eligible for asylum, an individual must show that he is unwilling or unable to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Melkonian v. Ashcroft*, 320 F.3d 1061, 1064 (9th Cir.2003) (quoting 8 U.S.C. § 1101(a)(42)(A)). Not only must the petitioner show that he or she subjectively fears persecution, but he or she must also offer "credible, direct, and specific evidence in the record" to show that persecution is a reasonable possibility. *See Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir. 1995). Because the IJ based his decision to deny asylum on an adverse credibility determination, he must provide "specific, cogent reasons" to support his determination. *See Zahedi v. INS*, 222 F.3d 1157, 1165 (9th Cir.2000). These reasons cannot be peripheral, but rather must go to the heart of petitioner's claim. *See de Leon–Barrios v. INS*, 116 F.3d 391, 393–94 (9th Cir.1997). Because the BIA adopted the decision of the IJ as its own, we review the decision of the IJ. *See Alaelua v. INS*, 45 F.3d 1379, 1381–82 (9th Cir.1995).

■ We hold that there was substantial evidence to support the IJ's decision. *See Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002). Among other things, there was support for the IJ's conclusion that several documents may have been fraudulent, including the letters and membership card offered to show that Desta was a member in the AAPO and Medhin. The genuineness of these documents goes to the heart of his claim. *See Pal v. INS*, 204 F.3d 935, 938 (9th Cir.2000). Further, there were material inconsistencies in petitioner's testimony concerning the extent of his injuries, as well as in the wife's testimony as to the circumstances of her alleged rape. These inconsistencies also go to the heart of petitioner's claim. We therefore deny on the merits Desta's petition for review.

## III. Motion to Stay Voluntary Departure

■ Whether and in what circumstances this court has the power to entertain a motion to stay voluntary departure when that motion is filed after the period for voluntary departure has expired is an issue of first impression in this circuit. We expressly left this question open in *El Himri v. Ashcroft*, 344 F.3d 1261, 1263 n. 2 (9th Cir.2003). Other circuits have disagreed on the question. The First Circuit has concluded that it has plenary authority to reinstate an expired period of voluntary departure. *See Velasquez v. Ashcroft*, 342 F.3d 55, 59 (1st Cir.2003). By contrast, the Tenth Circuit has concluded that it may not grant an untimely motion to stay voluntary departure. *See Sviridov v. Ashcroft*, 358 F.3d 722, 731 (10th Cir.2004). We take a middle course in this case. We construe Desta's motion to stay removal, filed before the thirty-day voluntary departure period had expired, as including a

motion to stay voluntary departure. We do not reach the question that would be presented if Desta had not filed a motion for stay of removal within the thirty-day voluntary departure period, but rather had merely filed a motion for a stay of voluntary departure after the expiration of the thirty-day period.

■ We are guided by two principles in determining the extent of our authority under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). First, we narrowly construe the sections of IIRIRA limiting judicial review and the exercise of courts' traditional equitable powers. *See Andreiu v. Ashcroft*, 253 F.3d 477, 481 (9th Cir.2001) (en banc) (citing *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)). The Supreme Court has recently admonished that "we should not construe a statute to displace courts' traditional equitable authority absent the 'clearest command,' or an 'inescapable inference' to the contrary." *Miller v. French*, 530 U.S. 327, 340–41, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). Second, when interpreting IIRIRA, we avoid an interpretation that would lead to an absurd result, such as the expenditure of unnecessary judicial resources or overly severe consequences toward aliens. *See Andreiu*, 253 F.3d at 481–82.

We first addressed the impact of IIRIRA on our ability to stay the period of voluntary departure in *Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166 (9th Cir.2003). Prior to IIRIRA, we had interpreted the Immigration and Naturalization Act to require an automatic stay of voluntary departure while an alien was pursuing a petition for review before this court. *See Contreras–Aragon v. INS*, 852 F.2d 1088, 1091 (9th Cir.1988) (en banc). Under IIRIRA, however, we no longer review an IJ's decision to grant or deny voluntary depar-

ture, and there is no longer an automatic stay of deportation, both of which had formed the basis for our decision in *Contreras–Aragon*. *See* 8 U.S.C. §§ 1229c(f); 1252(a)(2)(B)(I); 1252(f)(2). As a result, we concluded in *Zazueta–Carrillo* that there should be no automatic stay of voluntary departure. 322 F.3d at 1172. However, we expressly left open the question of whether the court could grant a stay of voluntary departure if an alien filed a motion for such a stay. *Id.* at 1174.

■ Judge Berzon concurred in *Zazueta–Carrillo*, specifically addressing our authority to issue a stay of voluntary departure. *See id.* at 1175. We subsequently adopted Judge Berzon's reasoning in *El Himri v. Ashcroft*, 344 F.3d at 1262. Judge Berzon's argument rested primarily on the fact that while IIRIRA limited our ability to review the merits of a decision to grant or deny voluntary departure, it was silent as to our ability to *stay* voluntary departure. As a result, "we retain our traditional equitable power to issue stays preserving the status quo." 322 F.3d at 1176 (Berzon, J., concurring). Judge Berzon also relied on the fact that aliens who are forced to depart before their appeal is heard may not be able to return to the United States, thus making their appeal effectively moot:

> Without our equitable authority to stay the availability of voluntary departure periods, at the time an alien is granted voluntary departure he or she would be faced with having to leave forthwith to preserve the benefits of voluntary departure, risking nonreturn in spite of a potentially meritorious case. The asylum-seeker would have to weigh the dangers of abuse in and/or confinement to the country in which the alien was allegedly persecuted against the penalties attached to forfeiting a grant of voluntary departure: a considerable fine and a 10–

year prohibition on "any further relief under this section and sections 240A, 245, 248, and 249." 8 U.S.C. § 1229c(d). An alien's departure in these circumstances could in effect void the asylum appeal, because the alien might not be able to return to the United States if he or she successfully petitioned for relief through judicial review.

*Id.* at 1177 (Berzon, J., concurring) (footnote omitted).

In *El Himri*, we held that we have the equitable power to grant a stay of voluntary departure. 344 F.3d at 1262. We adopted the same legal standard for deciding motions to stay voluntary departure as we use to decide motions to stay removal. *Id.* For both motions, the standard is the same as that employed in determining whether a litigant is entitled to traditional injunctive relief. That is, "a petitioner must show (1) 'a probability of success on the merits and the possibility of irreparable injury,' or (2) 'that serious legal questions are raised and the balance of hardships tips sharply in the petitioner's favor.'" *Id.* (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir.1998)).

We further indicated in *El Himri* that we would also follow the procedures used to decide motions for stays of removal that were set forth in *de Leon–Barrios v. INS*. *See El Himri*, 344 F.3d at 1262 & n.1; *see also* General Order 6.4(c). Under General Order 6.4(c), when an alien seeking review of the BIA's decision files a motion to stay removal (and, after *El Himri*, a motion to stay voluntary departure), the clerk automatically issues a temporary stay. If the government files a notice of non-opposition, thus consenting to the stay, the clerk extends the temporary stay until a decision is reached on the merits and the mandate issues, unless there is further action by the court. If the Attorney General opposes the motion or fails to file a response, the

motion is sent to a motions panel for consideration under the standard for granting a stay of removal or voluntary departure.

IIRIRA does not specify the circumstances in which we may issue a stay of voluntary departure, and therefore does not act as a bar to the use of our equitable powers. *See Zazueta–Carrillo*, 322 F.3d at 1176 (Berzon, J., concurring). IIRIRA deprives us of jurisdiction to review the decision by the BIA to grant or deny a request for voluntary departure, 8 U.S.C. § 1229c(f), but we are not being asked to review such a decision. Desta has already been granted voluntary departure, once by the IJ and again by the BIA. Rather, as in *El Himri*, we are being asked to stop the voluntary departure clock from running while we consider Desta's petition for review, and to allow it to resume after we decide the merits of that petition.

■ Nor are we being asked to extend the period for voluntary departure in contravention of INS regulations. *See* 8 C.F.R. § 1240.26(f) ("Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of[listed officials within U.S. Immigration and Customs enforcement, or the former INS]."). As *El Himri* made clear, if a stay is granted, the total time period for voluntary departure remains the same as that granted by the BIA. Once the mandate issues, typically 52 days after our decision, the alien will have the same amount of time to depart as when the stay was issued. Some of that time will have been used before the stay is issued, and some of it will remain. But the number of days remaining will be the same. Thus, while we are stopping the clock from running on the time petitioner has to depart voluntarily, we are not adding more time to that clock. *See El Himri*, 344 F.3d at 1262 ("We conclude that

the District Director's authority to extend voluntary departure does not limit this court's equitable authority to grant a stay of the voluntary departure time period.").

■ There is thus no statutory bar to using our equitable powers to construe Desta's motion to stay removal as including a request to stay voluntary departure. Further, it is clear that we have the equitable power to construe motions broadly. In many other cases, we have construed motions and pleadings differently from what they appeared to be on their face. *See, e.g., Dils v. Small,* 260 F.3d 984, 986 (9th Cir.2001) (construing an appeal from a denial of a petition for writ of habeas corpus as a request for a certificate of appealability); *United States v. Span,* 75 F.3d 1383, 1386 (9th Cir.1996) (construing a petition for a writ of *coram nobis* as a petition for a writ of habeas corpus); *Hamilton v. United States,* 67 F.3d 761, 764 (9th Cir.1995) (construing a petition for a writ of habeas corpus as a request for resentencing to avoid a jurisdictional defect).

■ Motions to stay removal and to stay voluntary departure are more similar to one another in form and scope than many of the motions cited above that were construed to be, or to include, other motions. Most important, the same substantive standards govern motions to stay removal and motions to stay voluntary departure. *See El Himri,* 344 F.3d at 1262. Thus, if the standard to stay removal is satisfied, the standard to stay voluntary departure is necessarily satisfied. Moreover, *El Himri* established that the same procedures used for motions to stay removal are also used for motions to stay voluntary departure. *Id.* A motion to stay voluntary departure is thus in many ways "ancillary" to a motion to stay removal, *see Zazueta–Carrillo,* 322 F.3d at 1175 (Berzon, J., concurring), and it is reason-

able to construe a motion to stay removal to include a request to stay voluntary departure.

The same practical considerations that motivated us in *El Himri* are present here. *Cf. Zazueta–Carrillo,* 322 F.3d at 1177 (Berzon, J., concurring). If Desta or others like him are required to return to their countries of origin while they petition for review by this court, they may not be able to return to this country even if they are eventually successful on the merits of their petitions. By definition, aliens seeking asylum contend that they are subject to persecution when they return to their own countries, where they risk further harm, potentially including imprisonment and even death. It thus serves the purposes of our asylum law, as well as the interests of justice, to construe motions to stay removal as including motions to stay voluntary departure.

■ Finally, if an alien moves for a stay of removal within the thirty-day voluntary departure period, it would border on ineffective assistance of counsel to fail to file a motion to stay voluntary departure simultaneously with a motion to stay removal. If an alien is eligible for a stay of removal, he is necessarily eligible for a stay of voluntary departure. By failing to protect an alien's ability to depart voluntarily, an attorney would be severely prejudicing his client. While an alien does have the ability to cure such a defect through a motion to reopen, *see Iturribarria v. INS,* 321 F.3d 889, 894–95 (9th Cir.2003), the requirements for asserting an ineffective assistance of counsel claim in this manner are quite onerous. *See Matter of Lozada,* 19 I. & N. Dec. 637 (BIA 1988) (requiring alien to submit an affidavit describing why the alien agreed to the prior litigation strategy, to allow prior counsel to respond, and to file a complaint with the appropriate disciplinary authorities). It is much

simpler, both for the alien and the BIA, simply to construe a motion to stay removal filed within the voluntary departure period as including a motion to stay voluntary departure.

 In this case, however, there was no such ineffective assistance of counsel. Desta's period of voluntary departure expired before this court's decision in *Zazueta–Carrillo*. Based on the prior state of the law, Desta (and his counsel) would have been justified in thinking that the period of voluntary departure would be automatically stayed, just as it had been prior to IIRIRA. *See Zazueta–Carrillo*, 322 F.3d at 1174(suggesting that the BIA consider reopening petitioner's case because of the prejudice resulting from the change in the rule regarding stays of voluntary departure). IIRIRA and our decision in *Zazueta–Carrillo* changed the legal landscape, and it was not unreasonable for Desta, and aliens in his position, to have failed to foresee that the rules regarding stays of voluntary departure would change. Unlike motions to stay removal, which were explicitly required by IIRIRA, the new law made no such provision for requiring an affirmative request to stay voluntary departure. Further, while many of the reasons underlying the decision in *Contreras–Aragon* were no longer applicable, the result reached in *Zazueta–Carrillo* was not a foregone conclusion.

The government did not earlier oppose Desta's motion for a stay of removal. Indeed, it filed a notice of non-opposition to that motion. However, it now opposes his motion for stay of voluntary departure. Since we hold today that Desta's motion for a stay of removal should be construed as including a motion for a stay of voluntary departure, the government may believe that it has been prejudiced by its failure to oppose the earlier motion for a stay of removal. That is, it may believe that if it had opposed the motion for a stay of removal, we would have denied that motion on the merits, with the consequence that a motion for a stay of voluntary departure would never have been made or, if made, would have similarly been denied.

We recognize that some incidental prejudice, both to the government and to aliens, is occasioned by the transition to the post-IIRIRA regime. Indeed, if we ruled for the government in this case, Desta and others like him would be prejudiced, since by the time we decided *Zazueta–Carrillo* Desta's period of voluntary departure had expired. That is, by the time Desta had notice that he should file a motion to stay voluntary departure, it would have already been too late to do so. Further, unlike the substantial prejudice that would occur if, through no fault of their own, hundreds of aliens were unable to take advantage of the voluntary departure that had been granted by the IJ and BIA, the prejudice to the government is relatively minimal. Such prejudice will only be present where the government filed a statement of non-opposition in response to a motion to stay removal, but later opposes a stay of voluntary departure. Even where the government decides to oppose the second motion, the prejudice is likely to be small, given that both stays are governed by the same legal standard. Further, from this point forward, the government is on notice that a motion to stay removal, if made before the voluntary departure period has run, will be treated as including a motion to stay voluntary departure.

 We therefore hold that where an alien files a motion to stay removal before the period of voluntary departure expires, we will construe the motion to stay removal as including a timely motion to stay voluntary departure. In granting a mo-

tion to stay removal, or in extending the temporary stay under General Order 6.4(c), the court will also be staying the time remaining for the alien to depart voluntarily. As a result, Desta's subsequent motion to stay voluntary departure was unnecessary, as a stay of voluntary departure was already in place from the time the temporary stay was first entered by the clerk upon the filing of Desta's motion to stay removal on February 3, 2003.

### Conclusion

Desta filed a motion to stay removal five days prior to the last day for voluntary departure under the BIA's order. We construe that motion to include a motion to stay voluntary departure. As with a stay of removal, the stay of voluntary departure will expire upon issuance of the mandate in this case. Desta will have until five days after the issuance of the mandate to depart voluntarily. Pursuant to General Order 6.4(c), we extended the stay of removal when the government filed a statement of non-opposition, and we now extend, *nunc pro tunc*, the stay of voluntary departure pursuant to the same General Order.

The petition for review of the BIA's decision is **DENIED.** Petitioner's motion to stay voluntary departure is **GRANTED** *nunc pro tunc* to the date of his motion to stay removal. The stays of voluntary departure and removal will expire upon issuance of the mandate.