**Joseph ELIAN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.***

No. 02–72752.

United States Court of Appeals, Ninth Circuit.

June 2, 2004.

* We sua sponte amend the caption to reflect that Attorney General John Ashcroft is the proper respondent. The Clerk shall amend the docket to reflect the above caption.

Howard R. Davis, Esq., Van Nuys, CA, for Petitioner.

Regional Counsel, Western Region, Immigration & Naturalization Service, Laguna Niguel, CA, CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Carl H. McIntyre, Jr., Susan Houser, Esq., Ronald N. Ohata, Washington, DC, for Respondent.

Before: GOODWIN, PREGERSON, and TALLMAN, Circuit Judges.

## ORDER

In a case arising under the Illegal Immigration Reform and Immigrant Responsibility Act's ("IIRIRA") transitional rules where the Board of Immigration Appeals ("BIA") granted the alien voluntary departure, we must decide whether the voluntary departure period is stayed by the filing of a petition for review[1] in this court.[2] We find that it is and, accord-

---

1. We address the merits of the petition for review in a memorandum disposition filed contemporaneously with this opinion.

2. IIRIRA's transitional rules apply in cases where deportation or exclusion proceedings commenced before April 1, 1997, and the final deportation or exclusion order was is-

sued after October 30, 1996. *See Kalaw v. INS,* 133 F.3d 1147, 1150 (9th Cir.1997).

We stress that the voluntary departure question before us is limited to transitional rules cases. It is settled law that in permanent rules cases—those initiated after April 1, 1997—the voluntary departure period begins

ingly, deny petitioner's motion to stay voluntary departure as moot.

## I

Joseph Elian is a Christian Palestinian from the West Bank. In 1990, after spending three months in Jordan and acquiring a Jordanian passport, he traveled to the United States on a non-immigrant visa. On or about April 25, 1996, the Immigration and Naturalization Service issued an order to show cause charging Elian with violating the terms of his visa. On October 11, 1996, Elian, represented by counsel, admitted the charge, conceded deportability, and filed an application for asylum, withholding of deportation, and protection under the Convention Against Torture. The Immigration Judge ("IJ") heard Elian's case on September 20, 1999. The IJ denied Elian's applications for relief, but determined that Elian qualified for voluntary departure. Elian filed a timely appeal with the BIA. The Board streamlined the appeal and summarily affirmed the IJ's decision in an order dated August 1, 2002. This order gave Elian 30 days to voluntarily depart from the United States.

On August 27, 2002, Elian filed with us a petition for review of the BIA's decision and a motion to stay deportation. We granted the motion to stay deportation on March 14, 2003. On August 22, 2003, nearly a year after the expiration of the period for Elian to voluntarily depart, he filed a motion asking us to stay his voluntary departure period pending our consideration of his petition for review.

On March 1, 2004, we ordered the parties to file supplemental letter briefs addressing the stay of voluntary departure issue. Elian filed a brief in favor of an automatic stay; the government filed a brief taking the opposite position. However, at oral argument the government withdrew its brief and announced that it agreed with Elian that automatic stays are appropriate in transitional rules cases. In a letter dated April 27, 2004, the government memorialized this change of heart, reiterating its final position that in transitional rules cases the voluntary departure period should be automatically stayed pending judicial review of the deportation order.[3]

to run when the BIA renders its decision; the period is not automatically stayed by the filing of a petition for review in this court. *Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166, 1173–74 (9th Cir.2003).

If a permanent rules petitioner files a motion to stay voluntary departure before expiration of the voluntary departure period set by the BIA, we have equitable jurisdiction to issue the stay where the petitioner seeking review of a removal order shows either "(1) a probability of success on the merits and the possibility of irreparable injury, or (2) that serious legal questions are raised and the balance of hardships tips sharply in the petitioner's favor." *El Himri v. Ashcroft*, 344 F.3d 1261, 1262 (9th Cir.2003) (internal quotation marks and citation omitted). Where a permanent rules petitioner files a motion to stay *removal* (as distinct from a motion to stay *voluntary departure*) before the voluntary departure period set by the BIA expires, we construe the

motion to stay removal as including a timely motion to stay voluntary departure. *Desta v. Ashcroft*, 365 F.3d 741, 748 (9th Cir.2004). The standard for evaluating motions to stay removal is identical to the standard for evaluating motions to stay voluntary departure. *El Himri*, 344 F.3d at 1262. We lack jurisdiction to consider a motion to stay voluntary departure filed by a permanent rules petitioner after the departure period has expired. *Garcia v. Ashcroft*, 368 F.3d 1157, 1159 (9th Cir.2004) (per curiam order).

3. On April 2, 2004, we vacated submission of this case pending our decision in *Desta*. Although following the reasoning of *Desta* in this case would lead to essentially the same outcome, since Elian filed a timely and prevailing motion to stay removal, *see note 2 supra*, for the reasons discussed below we hold that *Desta* is not controlling in the transitional rules context.

## II

■ An alien who overstays a voluntary departure period set by the BIA is subject to a civil fine of between $1,000 and $5,000 and faces ten years of ineligibility for voluntary departure, cancellation of removal, adjustment of status, or permanent residence. Immigration and Nationality Act ("INA") § 240B(d), 8 U.S.C. § 1229c(d). Consequently, the answer to the question presented in this case is of enormous practical effect not only for Elian, but for every alien proceeding under the transitional rules who receives voluntary departure. Upon consideration of the three variations on the relevant statutory regime—the pre-IIRIRA "old" rules, the post-IIRIRA "permanent" rules, and the "transitional" rules—we agree with the parties and hold that the BIA-allotted time period for a transitional rules petitioner to voluntarily depart from the United States does not begin to run until our final disposition of the alien's petition for review.

## A

Our analysis of the voluntary departure issue begins with the pre-IIRIRA case of *Contreras–Aragon v. INS*, 852 F.2d 1088 (9th Cir.1988) (en banc). In *Contreras–Aragon* we recognized that we lost jurisdiction over a petition for review if an alien left the United States. *Id.* at 1094. Accordingly, we analogized refusing to stay the voluntary departure period to "grant[ing] the right to voluntarily depart, provided [the alien does] not seek judicial review." *Id.* Concluding that such an order could not be sustained, we held that an alien's voluntary departure period begins to run upon the issuance of our mandate. *See id.* at 1097. In effect, under *Contreras–Aragon*, a pre IIRIRA alien's voluntary departure period is automatically stayed by the filing of petition for review in this court.

## B

Post IIRIRA, the law split into two strands. Under the permanent rules, we can consider a petition for review after the petitioner has left the country. 8 U.S.C. § 1252(b)(3)(B). This factor was key to our decision in *Zazueta–Carrillo:*

IIRIRA repealed the jurisdictional provision that concerned us in *Contreras–Aragon*. We now may entertain a petition after the alien has departed. Congress's desire to expedite removal by voluntary assent now does not conflict with the alien's ability to pursue a petition for review. So the concern about fairness that motivated us in *Contreras–Aragon* has been alleviated.

322 F.3d 1166, 1171 (9th Cir.2003) (citations omitted).

The concern that animated *Contreras–Aragon*, however, is alive and well in the transitional rules context. *See* IIRIRA § 309(c)(1) ("[I]n the case of an alien who is in exclusion or deportation proceedings [before April 1, 1997] . . . the amendments made by this subtitle shall not apply."). If the voluntary departure period is not stayed, a transitional rules petitioner still faces the Hobson's choice of either (1) forfeiting the rights conditioned upon his or her timely departure by remaining in the United States to pursue a petition for review or (2) forfeiting his or her right to petition for review by leaving the country in a timely manner. *See Hose v. INS*, 180 F.3d 992, 996 (9th Cir.1999) (en banc) (noting that the transitional rules incorporate the statutory provision that strips our jurisdiction over an alien's petition for review once he leaves the United States). This is the dilemma faced by Elian. As we recognized in *Contreras–Aragon*, requiring such a choice is unacceptable.

C

Accordingly, we agree with the position promoted by both Elian and the government and hold that *Contreras–Aragon*, rather than the line of permanent rules cases running from *Zazueta–Carrillo* through *El Himri v. Ashcroft*, 344 F.3d 1261 (9th Cir.2003), and *Desta v. Ashcroft*, 365 F.3d 741, 748 (9th Cir.2004), controls in transitional rules cases.

The 30–day period for Elian to voluntarily depart the United States will begin to run upon the issuance of our mandate. Elian's motion to stay his voluntary departure period is denied as moot.

**MOTION FOR STAY OF VOLUNTARY DEPARTURE DENIED AS MOOT.**