**Abdo MOHAMED–NAGI TABT, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–74174.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 11, 2004.

Submitted June 9, 2004.

Decided June 9, 2004.

Haitham E. Ballout, Esq., Law Offices of Haitham E. Ballout, Burlingame, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Brenda M. O'Malley, Don G. Scroggin, Esq., Ethan B. Kanter, Esq., U.S. Department of Justice, Washington, DC, for Respondent.

Before: TASHIMA and CLIFTON, Circuit Judges, and LEIGHTON,* District Judge.

MEMORANDUM **

Abdo Mohamed–Nagi Tabt, a native and citizen of Yemen, petitions for review of an order of the Board of Immigration Appeals ("BIA") summarily affirming without opinion the decision of the Immigration Judge ("IJ"). In summary affirmance cases, we review the IJ's order as the agency's final decision. *Fajardo v. INS,* 300 F.3d 1018, 1019 n. 1 (9th Cir.2002). Tabt also has moved to extend the period of his voluntary departure.

**Petition for Review**

The IJ found that Tabt was not credible and accordingly denied his applications for asylum, withholding of removal, and relief under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

■ Tabt claims that, because of his tribal and political affiliations, he was targeted for a "revenge killing" in Yemen. He ultimately testified about three separate attempts on his life. Tabt's testimony with respect to one of these incidents (the "Land Rover incident") was consistent throughout the application and hearing process. The IJ refused to admit or consider two letters from officials in Yemen which would have further corroborated and supported Tabt's testimony concerning his past persecution. The IJ rejected the translations of these letters as incomplete (the signatures and the letterhead logo were not translated) and not properly certified. The letters' authenticity was apparently undisputed.

We conclude that the IJ abused her discretion in failing to admit and consider [1] these letters. It is less than clear that a signature (or a logo) can in fact be translated, and any technical shortcomings in the translation could have been addressed without prejudice to the Respondent. The IJ should have considered the letters, or, at a minimum, allowed Tabt time to obtain whatever certification the IJ felt was required.

■ Despite this error, the IJ's adverse credibility finding is supported by substantial evidence. *See Mendoza Manimbao v.*

---

* The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The letters were submitted to the BIA, but under the streamlined review process we are not able to determine whether they were considered there.

*Ashcroft*, 329 F.3d 655, 658 (9th Cir.2003) (an adverse credibility determination is reviewed for substantial evidence). Accordingly, the IJ's erroneous exclusion of the letters does not require us to grant Tabt's petition.

The letters supported Tabt's claims about the Land Rover incident and his general political affiliation, but the IJ's determination that Tabt was not credible was based instead on fundamental inconsistencies in his testimony about two other attempts on his life, and on Tabt's inability to explain those discrepancies. Nor could Tabt provide a credible explanation for why he "forgot" to reference in his initial asylum application incidents which resulted in the death of at least one acquaintance.

A particularly troubling inconsistency is Tabt's initial claim that his acquaintance, Mr. Hosin, was killed in 1984, during the initial confrontation in Rola, and his subsequent claim that Hosin was killed in 1991 or 1992, during a different attempt on Tabt's life. Tabt could not explain this discrepancy. On this record, a reasonable factfinder would not have been compelled to conclude that Tabt was a credible witness, and the IJ's adverse credibility finding was supported by substantial evidence.

■ Because Tabt cannot satisfy the lesser standard of proof required to establish eligibility for asylum, [h]e necessarily fail[s] to demonstrate eligibility for withholding of deportation as well. *Fisher v. INS*, 79 F.3d 955, 965 (9th Cir.1996) (en banc).

■ As for Tabt's claim under the CAT, it was not briefed, and if it were, it would also be based on the same testimony that the IJ found to be not credible. Because Tabt "points to no other evidence that he could claim the [IJ] should have considered in making [her] determination under the Convention Against Torture," his CAT claim must fail along with his asylum claim. *Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir.2003).

The petition for review must therefore be denied.

## Voluntary Departure

■ On November 8, 2002, the BIA granted Tabt voluntary departure for 30 days. On December 6, 2002, Tabt filed his Petition for Review in this court, and simultaneously moved for a stay of removal pending review. Respondent Ashcroft filed a statement of non-opposition to that request.

At the time Tabt petitioned for review, the 30–day voluntary departure period did not commence until this court issued its mandate. *See Contreras–Aragon v. INS*, 852 F.2d 1088, 1093 (9th Cir.1988).

However, on March 13, 2003, while Tabt's Petition here was pending (and more than 30 days after the BIA's decision), we issued our opinion in *Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166 (9th Cir.2003). We held there that under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the period for voluntary departure begins to run instead from the date of the BIA's decision. 8 U.S.C. § 1229c.

On the eve of oral argument in this matter, Tabt moved the court for leave to file a supplemental brief[2] on the issue of voluntary departure. Tabt asks us not to apply *Zazueta–Carillo* retroactively, and

---

**2.** We construe Tabt's Motion as a motion for a ruling on the commencement date for his period of voluntary departure under our recent opinions, including *Zazueta–Carillo*. We conclude that we do not require additional briefing on the subject, and in this Memorandum address the substantive issue.

to instead conclude that the period for his voluntary departure will not commence until we issue our mandate, consistent with the law as of the time Tabt filed his Petition for Review. Alternatively, he asks us to stay the BIA's voluntary departure period under *El Himri v. Ashcroft*, 344 F.3d 1261 (9th Cir.2003).

In *Desta v. Ashcroft*, 365 F.3d 741, 749 (9th Cir.2004), we held that "where an alien files a motion to stay removal before the period of voluntary departure expires, we will construe the motion to stay removal as including a timely motion to stay voluntary departure." There, because the alien's motion to stay removal was filed prior to the expiration of the voluntary departure period, we held that "the stay of voluntary departure will expire upon the issuance of the mandate...." *Id.*

Tabt's situation is substantially similar. He timely filed a motion for stay of removal, and we will construe that request as including a timely motion to stay voluntary departure. The government did not oppose Tabt's initial request. Pursuant to General Order 6.4(c), we will extend *nunc pro tunc* the stay of voluntary departure. The stay of voluntary departure will expire upon the issuance of the mandate. Because there were two days left in the voluntary departure period at the time of the stay, the voluntary departure period will expire two days after the mandate.

### Conclusion

The petition for review of the BIA's decision is DENIED. Petitioner's motion to stay voluntary departure is GRANTED *nunc pro tunc* to the date of his motion to stay removal. The stays of voluntary departure and removal will expire upon issuance of the mandate.