FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 01 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HARVINDER SINGH GABRI, | No. 05-76404 |
| Petitioner, | Agency No. A096-152-282 |
| v. | |
| ERIC H. HOLDER Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 1, 2010
San Francisco, California

Before: B. FLETCHER and CLIFTON, Circuit Judges, and ANELLO,[**] District
Judge.

Harvinder Singh Gabri, a native of India, appeals the decision of the Board

of Immigration Appeals ("BIA") affirming the denial of his application for asylum,

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Michael M. Anello, United States District Judge for
the Southern District of California, sitting by designation.

withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252 and we deny the petition.

Gabri's petition for asylum, withholding of removal, and CAT relief rested on three grounds: the death of his father during the 1984 Hindu riots; Gabri's two arrests, one in 2000 and one in 2001, during which police beat him; and the murder of an acquaintance in February 2002. Gabri testified that he fled India in 2002 after attempting to provide information to the police about the murder.

The immigration judge ("IJ") denied Gabri's application on June 9, 2004, finding his testimony not credible. Gabri had testified that, in 2002, he was at a party at which a friend, Natish Katara, was present. He later read in the news that Katara had been murdered. Newspaper reports in March 2002 stated that Vikas and Vishal Yadav, the son and nephew of D.P. Yadav, had confessed to the murder. Gabri testified on cross-examination that he did not know Katara very well and did not know whose party it was or whose marriage it celebrated.

Gabri testified that he wanted to tell the police that Katara had feared harm from the Yadav family and that he had seen Katara arguing with Vikas Yadav "from a far distance," but that he could not hear the substance of the conversation. The police refused to listen and instead accused Gabri of wanting to testify against the Yadav cousins because of a long-standing tension between the Yadav and

Gabri families.  After Gabri attempted to provide this information to the police, Vikas Yadav and several armed police officers came to Gabri's house on August 18, 2002.  Gabri fled from the roof and escaped the ensuing gunfire unharmed. When Gabri returned home the next day, his mother told him that Vikas Yadav had threatened to kill Gabri because he knew too much about Katara's murder.

In support of this testimony, Gabri offered affidavits from a cousin and neighbor, which the IJ noted were nearly identical in content.  Each affidavit stated that the Katara murder occurred in June 2002.

The IJ cited inconsistencies in Gabri's testimony in support of the adverse credibility finding.  The IJ noted that the date of Katara's death in Gabri's declaration and the supporting affidavits did not match the date of Katara's death reported in the submitted newspaper articles.  The IJ also questioned whether Gabri knew of the murder at all before leaving for the United States and noted that the suspects, the Yadav cousins, were in custody and awaiting trial when Gabri tried to provide information to the police.  In addition, the IJ found that Gabri did not have the traditional appearance of a Sikh and that, even if Gabri were a Sikh, a minority Sikh recently had been elected prime minister.

The BIA adopted and affirmed the IJ's adverse credibility determination on October 11, 2005, reviewing for clear error in addition to citing *Matter of Burbano*,

20 I. & N. Dec. 872 (BIA 1994). The BIA found "significant inconsistencies" supporting the IJ's adverse credibility finding. Specifically, the BIA cited the inconsistency between the actual timing of Katara's death in February 2002 and the statements of the affidavits and declaration placing the murder in June 2002, and the fact that the Yadav cousins were in custody and had confessed to the murder at the time Gabri testified the police came to his house with one of the cousins, Vikas Yadav. The BIA did not address the IJ's other findings. Rather, the BIA based its decision "solely on the adverse credibility finding."

Because the BIA reviewed the IJ's decision for clear error, and adopted and affirmed the IJ's adverse credibility determination, we look to the IJ's decision as a guide, reviewing the reasons the BIA explicitly identified, and then examining the IJ's reasoning. *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008). "We do not review those parts of the IJ's adverse credibility finding that the BIA did not identify as 'most significant' and did not otherwise mention." *Id.* We review the credibility findings for substantial evidence. *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009).

Substantial evidence supports the finding that Gabri was not credible. On cross-examination, Gabri offered conflicting testimony about when he went to the police station. He testified that he went to the police soon after learning of the

murder in February 2002. He then stated that he had gone to the police station "a few days earlier than 18 August."

In addition, after being informed that Vikas Yadav was in police custody in August 2002, Gabri testified that he only "saw a person [ ] resembling Vikas Yadav, but my mother told me that he was Vikas Yadav" at his house in August. Gabri's declaration in support of his asylum application, however, stated that he saw Vikas and the police, who fired shots at him and insulted his mother.

Gabri could not explain why the affidavits stated the Katara murder occurred in June 2002 when it actually took place in February 2002, except to state on cross-examination that neither his cousin nor his neighbor, both of whom submitted affidavits in English, spoke English. Furthermore, at the beginning of his testimony before the IJ, Gabri had requested that his own declaration in support of his application be corrected to reflect that Katara's murder took place in February 2002 instead of June 2002. The declaration shows that the word "June" is handwritten on the typed declaration.

Because Gabri premised his asylum claim in part on the incident following Katara's murder—indeed, he stated that incident was the one that prompted him to leave India—the testimony goes to the heart of his claim. *See Desta v. Ashcroft*,

365 F.3d 741, 745 (9th Cir. 2004).  Therefore, we affirm the BIA's denial of Gabri's asylum claim.

Because Gabri failed to establish eligibility for asylum, he necessarily failed to meet the more stringent standard for withholding of removal.  *See Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006).

Finally, Gabri is not entitled to CAT relief.  "Because [Gabri's] testimony was found not credible, to reverse the BIA's decision we would have to find that the reports alone compelled the conclusion that [Gabri] is more likely than not to be tortured."  *Almaghzar v. Gonzales*, 457 F.3d 915, 922-23 (9th Cir. 2006).  The documentary evidence does not compel this conclusion.

**Petition DENIED.**